IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRIAN COLVIN,**                                  Case Number 5:13cv2674

      Plaintiff,                             Judge John R. Adams

      v.                                      Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                          REPORT AND RECOMENDATION

### INTRODUCTION

Plaintiff Brian Colvin seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated December 4, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on October 6, 2011 alleging disability since July 28, 2011 due to anxiety, depression, and numbness in his hands and back. (Tr. 14, 236, 245, 283, 287). His claims were denied initially and on reconsideration. (Tr. 184, 188, 197, 204). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 209). At the hearing Plaintiff, represented by counsel, and a vocational expert ("VE") testified. (Tr. 34). On July 29, 2013, the ALJ concluded Plaintiff was not disabled. (Tr. 11). Plaintiff's request for appeal was denied, making the decision of the ALJ the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On December 4, 2013, Plaintiff filed the

instant case. (Doc. 1).

**FACTUAL BACKGROUND**

Plaintiff generally challenges only the ALJ's conclusions regarding his spinal conditions (Docs. 16, 18, 20) and therefore waives any other claims. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver). Accordingly, the undersigned addresses only the record evidence pertaining to Plaintiff's spinal conditions.

*Plaintiff's Background, Vocational Experience, and Daily Activities*

Born April 7, 1966, Plaintiff was 44 years old at the time of his alleged onset date. (Tr. 25). He has a high school education education and prior relevant work experience as a smelter, tow motor driver, and grinder. (Tr. 25).

At the time of the hearing, Plaintiff said he had lived in his vehicle for the past year and would occasionally stay with his sister or mother. (Tr. 40, 51-52). Plaintiff said he had been coping with pain by taking aspirin or Tylenol until he was prescribed Vicodin the day before the hearing. (Tr. 42). Plaintiff described constant severe pain in his back, neck, head, arms, hands, shoulders, and feet, especially with activity, twisting, bending, walking, and sitting. (Tr. 42-45). Plaintiff thought he could walk for 30 feet, sit for only "a little bit", and lift up to fifteen pounds for a "very short" period of time. (Tr. 47, 55).

With regard to daily activity, Plaintiff read the newspaper, parked at a public park during the day, was able to maintain personal care, and occasionally helped his mother wash dishes after dinner. (Tr. 53, 58-59). Plaintiff drove to Delaware to visit his daughter approximately two times in 2011. (Tr. 53). He said he felt pain in his back and fatigue during the trip, but was able to cope with cruise control and frequent rest stops. (Tr. 54).

*Relevant Medical Evidence*

On July 4, 2010, Plaintiff sought treatment at Wadsworth-Rittman Hospital after falling down the stairs. (Tr. 365). He complained of right-sided neck pain and generalized back pain. (Tr. 365). On examination, Plaintiff had good range of motion, was ambulatory, and had a normal gait. (Tr. 365). A CT scan of Plaintiff's spine revealed mild degenerative disc disease at C4-5 and no fracture or subluxation of the cervical spine. (Tr. 368). At a follow-up visit on July 21, Plaintiff's examination was generally unremarkable. (Tr. 356).

Plaintiff went to the hospital to obtain medical clearance for substance abuse treatment on August 3, 2010, where he had no physical complaints except rib pain and examination revealed a supple, non-tender neck with full range of motion. (Tr. 351). Plaintiff's nerves were grossly intact, he had full muscle strength in upper and lower extremities, and his gait was within normal limits. (Tr. 352).

On November 3, 2010, Mark Pluskota, D.O., examined Plaintiff due to complaints of moderate middle back and spine pain. (Tr. 440). Dr. Pluskota noted vertebral spine tenderness in the upper T-spine, paraspinal muscle spasm bilaterally, moderately restricted and painful range of motion in the upper back, antalgic side bend posture, mild vertebral spine tenderness, paraspinal spasm on the left side, negative bilateral straight leg raise testing, normal motor system, normal sensory exam, bilaterally symmetrical reflexes, antalgic gait and posture, and decreased and painful lower back range of motion. (Tr. 441). Dr. Pluskota assessed backache and prescribed Flexeril, a diclofenac enteric coated tablet, and Ultram. (Tr. 441). X-rays of Plaintiff's thoracic and lumbar spine taken the same day revealed mild degenerative change in the thoracic spine, no acute abnormality, limited degenerative change of the lower lumbar spine, possible pars defects of L4, and healing fracture of the right eleventh rib. (Tr. 408).

On November 10, 2011, Plaintiff reported to the emergency room for mental health treatment. (Tr. 480). Plaintiff complained of chronic neck and back pain but physical examination was unremarkable. (Tr. 480-81).

On January 30, 2012, Plaintiff went to the emergency room seeking mental health treatment and also reporting chronic back pain. (Tr. 474). Examination of Plaintiff's back and neck was normal and he had intact motor sensory cranial nerves and normal reflexes. (Tr. 474-75).

Plaintiff treated with Keaton Bullen, M.D., of the Internal Medicine Center, on February 7, 2012, where examination revealed intact sensation except in the bilateral distal fingers, decreased patella reflexes bilaterally, and full motor strength in the upper and lower extremities. (Tr. 504-05). Plaintiff was diagnosed with low back pain and prescribed cyclobenzaprine and Naprosyn. (Tr. 506).

On the same date, Dr. Bullen opined Plaintiff had decreased bilateral patella reflexes, full motor strength bilaterally in upper and lower extremities, intact sensation, affected ambulation, and limited range of motion in the lower extremities due to pain. (Tr. 514). Dr. Bullen said Plaintiff would be able to sit without difficulty; appeared to be in moderate pain while lying on his back and with certain movement of the low back; became tearful during the exam; had a slow, affected, limited ambulation; and limited bending ability. (Tr. 515).

A February 13, 2012 x-ray of Plaintiff's lumbar spine revealed degenerative changes in the lower lumbar spine, no subluxation with flexion or extension, and no acute findings. (Tr. 492).

On February 27, 2012, Aaron Cochran of the Internal Medicine Center reported Plaintiff had a mildly tender lumbar and sacral spine, nontender paraspinal musculature, negative straight

4

leg raise testing, and no clubbing or edema in the extremities. (Tr. 501-02). Mr. Cochran diagnosed low back pain and prescribed Naprosyn. (Tr. 502).

From April 23, 2012 to April 25, 2012, Plaintiff treated at Beebe Medical Center for complications related to gastrointestinal bleeding. (Tr. 521-44). During his stay, the attending physicians indicated Plaintiff denied back and neck pain and had normal physical examinations. (Tr. 530-31).

On May 8, 2012 and May 22, 2012 Hector Maya, M.D., treated Plaintiff for joint pain associated with back pain and gait disturbance. (Tr. 549, 553). On examination, Plaintiff had joint pain, gait disturbance, joint swelling, no neck pain, no muscle pain or weakness, and bilateral mild low back pain. (Tr. 549, 553). Dr. Maya diagnosed lower back pain and advised Plaintiff continue his medication regimen. (Tr. 550, 555).

May 14, 2012 x-rays of Plaintiff's lumbosacral spine revealed degenerative disc disease at L4-L5 and L5-S1 with possible unilateral spondylolysis of L4 on the right side, minimal spondylolisthesis of L4 on L5, and facet arthritis particularly at L4-L5 and L5-S1. (Tr. 547).

On May 23, 2012, Plaintiff treated with John Greco, M.D., for longstanding back pain. (Tr. 565). Plaintiff had a history of performing heavy work in the foundry. (Tr. 565). On examination, Plaintiff was not in acute distress; ambulated with a normal heel-to-toe gait; had no difficulty with stance or station; showed no obvious structural abnormality in the thoracolumbar spine; had a mild restriction in range of motion in flexion, extension, and lateral bending; no instability with flexion or extension; mild diffuse tenderness; moderate restriction in range of motion in the lumbar spine; normal muscle strength and tone; and negative straight leg raise testing in the seating and supine positions. (Tr. 565-66). Dr. Greco diagnosed degenerative disc disease, degenerative spondylolisthesis, lumbar radiculopathy, possible concomitant cervical

5

degenerative disc disease or cervical radiculopathy and recommended conservative treatment. (Tr. 566-67).

An MRI of the lumbar spine conducted June 1, 2012 revealed one-to-two millimeters of anterolisthesis L4 on L5 without spondylolysis or stenosis; osteophyte formation and bulging one-to-two millimeters at the L4-5 and L5-S1 level with mild bilateral foraminal narrowing; and no central canal stenosis, nerve root swelling, or displacement. (Tr. 557-58).

Plaintiff followed-up with Eric W. Eaton, P.A., (who was supervised by Dr. Greco), on June 4, 2012. (Tr. 560). Plaintiff's examination was generally unchanged from his previous visit. (Tr. 560-61). Mr. Eaton reviewed Plaintiff's MRI and diagnosed low back pain, adding the neurologic exam was benign and there was no evidence of any surgical indications. (Tr. 561).

On March 20, 2013, Plaintiff treated with Dr. Bullen while awaiting an appointment with an orthopedic doctor. (Tr. 581-83). Plaintiff had normal motor strength, midline bony prominence near L3-L4, mild bilateral paraspinal muscle spasm, normal bilateral upper and lower extremities, diminished patellar reflex bilaterally, and 2/4 Achilles reflexes. (Tr. 582). Dr. Bullen prescribed Tramadol. (Tr. 583).

On March 22, 2013, Plaintiff saw orthopedic specialist Susan M. Moen, M.D. (Tr. 590). Although Dr. Moen's examination of Plaintiff was unremarkable, she diagnosed cervical and lumbar radiculopathy. (Tr. 590). Dr. Moen recommended Plaintiff try non-operative modalities such as steroid injections and physical therapy. (Tr. 590).

Plaintiff saw Dr. Bullen on May 7, 2013. (Tr. 584). Plaintiff said he had not returned to see the orthopedic doctor since they "messed up" his corticosteroid injection by ordering a cervical, rather than lumbar injection. (Tr. 584). On examination, Plaintiff had midline bony prominence near L3-4, mild bilateral paraspinal muscle spasm, paraspinal spasm, normal

6

bilateral upper and lower extremities, diminished patellar reflex bilaterally, no vertebral spine tenderness, a range of motion in the neck with limited lateral bending and rotations, normal neck flexion and extension, normal neck motor strength, and diminished bilateral neck sensation distally. (Tr. 585). Dr. Bullen said Plaintiff requested stronger medication even though Tramadol helped somewhat. (Tr. 585). Dr. Bullen said Plaintiff was unable to afford steroid injections and had been denied coverage at two pain management centers. (Tr. 585).

Plaintiff had a second MRI taken on May 15, 2013, this time of the cervical spine. (Tr. 588). The imaging revealed moderate degenerative changes of the mid and lower cervical spine, canal stenosis at C4-C5 and C5-C6, and a prominent disc herniation left of the midline flattening the left side of the spinal cord at C5-C6. (Tr. 589).

*State Agency Medical and Psychological Assessments*

Consultative examiner Lisa Schroeder, M.D., examined Plaintiff on November 22, 2011. (Tr. 449). Plaintiff's chief complaint was for low back and neck pain. (Tr. 449). Dr. Schroeder said Plaintiff had ulnar nerve damage and surgery due to using a sledgehammer chronically in the foundry. (Tr. 449). Plaintiff told Dr. Schroeder his daily functions were more limited and he would lay with his feet propped up as much as he could. (Tr. 449). He was able to do some dishes and drive. (Tr. 449). Plaintiff said he had sought treatment from a chiropractor and Tramadol did not seem to help but home stretching helped a little. (Tr. 449). At the time, Plaintiff lived in his sister's house. (Tr. 449-50). On examination, Plaintiff had good range of motion in his neck, slightly decreased range of motion in his shoulders, slightly decreased strength in the upper and lower extremities, normal gait, and difficulty with heel-to-toe walking. (Tr. 450). Dr. Schroder assessed Plaintiff with degenerative disc disease in the back and neck with some radiculopathy causing anterior leg pain and bilateral arm pain with numbness and

7

tingling. (Tr. 450). Dr. Schroder opined Plaintiff would not be able to do any heavy lifting or carrying and could frequently lift up to ten-to-twenty pounds at a time. (Tr. 450). Plaintiff could not work with small objects and would be able to work in a moving active position for thirty-to-sixty minutes at a time for up to four-to-six hours per day. (Tr. 450). Plaintiff could work in a standing position for thirty-to-sixty minutes at a time for up to four-to-six hours per day and would be able to work in a seated position for one-to-two hours at a time for up to eight hours per day. (Tr. 450-51).

On December 14, 2011, state agency physician Gerald Klyop, M.D., reviewed Plaintiff's records and assessed Plaintiff's residual functional capacity ("RFC"). (Tr. 96). Dr. Klyop determined in an eight-hour workday, Plaintiff could lift or carry up to twenty pounds occasionally and ten pounds frequently, stand or walk for about six hours, sit for more than six hours, and had a limited ability to push or pull in his right upper extremities. (Tr. 96). Plaintiff could occasionally push or pull with his right arm and could perform only frequent bilateral handling and fingering. (Tr. 96-97).

Consultative examiner Britney Carter, D.O., examined Plaintiff on October 29, 2012, where Plaintiff revealed no tenderness to palpation spinally or paraspinally from the occiput to the sacral base, negative straight leg raise testing, some limitations in motion of the dorsolumbar spine, ability to get off and on the examination table without difficulty, inability to bend over and touch toes, 5/5 strength testing bilaterally in the upper extremities, and 4/5 strength testing bilaterally in the lower extremities – however, Dr. Carter noted Plaintiff did not give his best effort. (Tr. 573-75). Plaintiff was unable to perform heel-to-toe walking and appeared unsteady on his feet. (Tr. 575). Dr. Carted concluded Plaintiff could complete a full work shift as long as he did not have to sit for longer than thirty minutes, stand for more than ten minutes, or walk

longer than 25 feet without taking a break. (Tr. 575).

*The ALJ's Decision*

On July 29, 2013, the ALJ determined Plaintiff had severe impairments of degenerative disc disease, diverticulosis, depression, and alcohol abuse (in remission). (Tr. 16). The ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal the severity of a listed impairment. (Tr. 17). Next, the ALJ determined Plaintiff had the RFC to perform a range of light work with certain limitations. (Tr. 18). Based on Plaintiff's age, education, work experience, RFC, and VE testimony, the ALJ concluded Plaintiff could find work in the national economy as a wire worker, electronics worker, or assembly press operator and therefore, was not disabled. (Tr. 26).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

9

**STANDARD FOR DISABILITY**

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?

2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can he perform past relevant work?

5. Can the claimant do any other work considering his RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only determined to be disabled if he satisfies each element of the analysis, including inability to do other work, and meets the duration requirements. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff argues the ALJ erred at step three by failing to: 1) appropriately analyze listing 1.04, and 2) find Plaintiff met or equaled listing 1.04(A). (Docs. 16, 18). These arguments are addressed together, below.

*Listing 1.04(A)*

As an initial matter, Plaintiff misconstrues the requisite standard of review. In his Reply, Plaintiff asks: "Do medical records clearly show that Plaintiff <u>absolutely</u> meets 1.04(A)?" (Doc. 18, at 3). Answering, Plaintiff writes: "No. But there are more than enough records to support a 1.04(A) cervical spine listing." *Id*. Even if there were "more than enough records" to support finding Plaintiff met or equaled listing 1.04(A), remand would not be required. To the contrary, the Court must affirm the Commissioner's decision if it is supported by substantial evidence, even if there is also substantial evidence to support finding in favor of the claimant. *Jones*, 336 F.3d at 477 (6th Cir. 2003). Nevertheless, the Court proceeds with the analysis.

The listings streamline the disability decision-making process by identifying people whose impairments are more severe than the statutory disability standard such that their impairments would prevent them from performing any gainful activity – not just substantial gainful activity – regardless of age, education, or work experience. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 416.925(a); Social Security Rule (SSR) 83-19, at 90)). The listings create a presumption of disability making further inquiry unnecessary. *Id.* Each listing establishes medical criteria, and to qualify for benefits under a listing, a claimant must prove his impairment satisfies all the listing's specified medical criteria. 20 C.F.R. § 404.1525(d); *see also Zebley*, 493 U.S. at 530.

Here, Plaintiff contends he meets listing 1.04(A), which states:

> Disorders of the spine (e.g., herniated nucleus puposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. 404, Subpt. P., App. 1, § 1.04. Importantly, Plaintiff must meet the listing criteria for a period of twelve months. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 499 (6th Cir. 2006); 20 C.F.R. § 416.920a(c)(3)-(4).

There is no "heightened articulation standard" in considering the listing of impairments; rather, the court considers whether substantial evidence supports the ALJ's findings. *Snoke v. Astrue*, 2012 WL 568986, at *6 (S.D. Ohio 2012) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). However, a reviewing court must find an ALJ's decision contains "sufficient analysis to allow for meaningful judicial review of the listing impairment decision." *Snoke*, 2012 WL 568986, at *6; *see also May*, 2011 WL 3490186, at *7 ("In order to conduct a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision."). The court may look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis. *Snoke*, 2012 WL 568986, at *6 (citing *Bledsoe*, 165 F. App'x at 411).

Here, the ALJ found Plaintiff did not meet or medically equal listing 1.04 because "no treating or examining physician ha[d] indicated findings that would satisfy the severity requirements of any listed impairment". (Tr. 17). In addition, the ALJ considered opinions of the state agency medical consultants, "who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion". (Tr. 17). Following careful review of the record and the ALJ's decision in its entirety, the Court finds the

12

ALJ's conclusion supported by substantial evidence and his analysis sufficient to allow for meaningful judicial review. *See*, *Snoke*, 2012 WL 568986, at *6; *Beauchamp v. Comm'r of Soc. Sec.*, 2014 WL 1154117, at *8 (N.D. Ohio).

Indeed, the ALJ fully and extensively discussed the record with respect to Plaintiff's spinal disorders. (Tr. 19-21). The ALJ provided a plethora of evidence and analysis, including discussion of treatment records, objective testing, opinion evidence, and Plaintiff's testimony and inconsistent statements, as further described below. *Id*.

Moreover, Plaintiff has not shown that he meets or medically equals listing 1.04(A) because there is no evidence of positive straight leg raise testing despite the involvement of lower back pain in Plaintiff's medical history. (Doc. 17, at 14). To this end, as stated above, listing 1.04(A) requires evidence of positive straight-leg raising test "if there is involvement of the lower back." 20 C.F.R. 404, Subpt. P., App. 1, § 1.04(A). Plaintiff admits there is no evidence of positive straight leg raise testing, but argues such evidence is not required because there is not involvement of the lower back. (Doc. 16, at 11). His attempt to circumvent the straight leg raise testing requirement is ineffective because Plaintiff consistently complained of and was diagnosed with lower back pain. (*See, e.g.,* Tr. 408, 441, 449, 502, 506, 514-15, 550, 555, 561, 590). In other words, because the record is clear that Plaintiff's impairment involved his lower back, a positive straight leg test was required to meet listing 1.04(A).

Also, Plaintiff has not shown evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss for a period of twelve months. 20 C.F.R. 404, Subpt. P., App. 1, § 1.04(A). As more fully set forth in the ALJ's opinion, there is substantial evidence to show Plaintiff never met the listing for a one-

year period. (Tr. 19-21). On August 3, 2010, Plaintiff had a full range of motion and no physical complaints except rib pain. (Tr. 19, 351). On November 3, 2010, Plaintiff had a normal sensory exam and symmetrical reflexes bilaterally. (Tr. 19-20, 441). The next evidence relevant to listing 1.04(A) does not appear until November 10, 2011, when Plaintiff reported to the emergency room for mental health treatment and despite complaints of chronic neck and back pain, physical examination was unremarkable. (Tr. 480-81). Also, at the consultative examination in November 2011, Plaintiff had a good range of motion in his neck and a normal gait. (Tr. 20, 450). On February 7, 2012, Plaintiff had full motor strength bilaterally. (Tr. 20, 514). In May 2012, Plaintiff had no neck pain, muscle pain, or weakness and normal muscle strength and tone. (Tr. 20, 549, 565-66). Similarly, in June 2012, he had normal muscle strength and tone. (Tr. 20, 560-61). Plaintiff had an unremarkable examination in March 2013 and in May, he had normal motor strength. (Tr. 20-21, 585). In sum, the ALJ's decision finding Plaintiff did not meet listing 1.04 for a period of twelve months is supported by substantial evidence.

Arguing the ALJ's analysis was insufficient, Plaintiff filed supplemental authority directing the Court to *Popp v. Comm'r of Soc. Sec. Admin.*, 2014 WL 1513844 (N.D. Ohio). (Doc. 20). There, the Court remanded for further analysis at step three because the ALJ simply set forth the requirements of the listing at issue without any analysis. *Id.*, at * 4-5 (concluding, "the ALJ needed to actually evaluate the evidence, compare it to [the listing], and give an explained conclusion, in order to facilitate meaningful judicial review."). Further, in a footnote, the Court pointed out the remainder of the ALJ's decision was unclear with respect to whether the ALJ considered the relevant listing. *Id.*, at *6 n3.

While the Court agrees with the rules of law set forth in *Popp*, it finds *Popp* distinguishable on its facts. Here, the ALJ's analysis of the listings is more complete than that of

14

the ALJ's in *Popp*. Moreover, unlike in *Popp*, the ALJ's opinion in its entirety is comprehensive and thorough. Because the Court is not prevented from engaging in meaningful judicial review on this record, *Popp* is not persuasive.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying DIB and SSI benefits applied the correct legal standards and is supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II<br>
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).